UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**ORBIT MOVERS & ERECTORS, INC.,**

   **Plaintiff,**

-v-

**ENVIRONMENTAL TECTONICS CORP.,**

   **Defendant.**

Case 3:14-cv-118

Judge Thomas M. Rose

---

**ENTRY AND ORDER DENYING ETC'S MOTION TO TRANSFER VENUE (Doc. #8)**

---

  This matter is now before the Court pursuant to a Motion To Transfer Venue Under 28 U.S.C. § 1404(a) and To Dismiss Under the Doctrine of *Forum Non Conveniens* Or, In the Alternative, To Dismiss Under Fed. R. Civ. P. 12(b)(6). (Doc. #8.) This Motion was filed by Defendant Environmental Tectonics Corp. ("ETC"). Plaintiff Orbit Movers & Erectors, Inc. ("OME") has responded to ETC's Motion and ETC has replied. This Motion is, therefore, ripe for decision.

  ETC seeks to transfer these proceedings to the United States District Court for the Eastern District of Pennsylvania or dismiss OME's Complaint under the doctrine of forum non conveniens. In the alternative, ETC seeks to dismiss OME's Complaint for failure to state a claim upon which relief can be granted. The only basis given for ETC's Motion is its assertion that the contract between it and OME contains a valid and enforceable forum selection clause. OME responds that the forum selection clause is inapplicable.

  OME's Complaint (doc. #4) was initially filed in the Common Pleas Court of

Montgomery County, Ohio, and subsequently removed to this Court by ETC based upon this Court having diversity subject matter jurisdiction. Count I of OME's Complaint is for breach of contract. Count II is for breach of an implied-in-fact contract, and Count III is for unjust enrichment.

## RELEVANT FACTUAL BACKGROUND

The basic facts in this matter are undisputed. They are taken from OME's Complaint.

OME is an Ohio corporation engaged in the business of construction. (Compl. ¶ 1.) ETC is a Pennsylvania Corporation engaged in the design, development, testing, installation, and integration of research altitude chambers. (Id. at ¶ 5.)

ETC is the prime contractor with the United States Air Force for a project at Wright Patterson Air Force Base known as the Research Altitude Chambers Project (the "Project"). (Id. at 4.) The Project was awarded to ETC in or near June of 2010 and was initially to be completed by August 2012. (Id. at ¶¶ 4, 6.) ETC subcontracted (the "Subcontract") with OME to perform portions of the Project. (Id. at ¶ 7.) OME began working on the Project in 2012 and has been working on the Project since then. (Id. at ¶ 15.)

During the course of the Project, ETC issued numerous revisions to the Subcontract drawings. (Id. at ¶ 16.) When revised drawings are issued, OME estimates the additional cost involved in the change and submits a Request for Change Order ("RCO") to ETC. (Id. at ¶ 17.) ETC then either directs OME to proceed with the changed or additional work or ETC cancels the request. (Id. at ¶ 18.)

OME has completed "dozens" of changes at the direction of ETC for which it allegedly has not been paid. (Id. at ¶ 19.) Additionally, the Project schedule has been extended and OME

has allegedly incurred additional field and home overhead costs. (Id. at ¶ 20.)

Both parties have also submitted additional evidence of record. ETC submitted the Declaration of William F. Mitchell, Jr. ("Mitchell Decl.") dated May 13, 2014. OME submitted the Declaration of Michael Rhea ("Rhea Decl.") dated Jul. 3, 2014.

### Mitchell Declaration

Mitchell, who is a Vice President of Contracts and Purchasing for ETC, declares that ETC did not accept OME's original or second or third proposals and instead negotiated a contract price. (Mitchell Decl. ¶¶ 1, 10-25.) Then, on April 26, 2012, ETC provide OME with Purchase Order No. 123574 (the "Purchase Order") which incorporates by reference seven attachments: (1) Scopes of Supply; (2) RAC Field Subcontractor List of Negotiations, Efforts, Clarifications and Changes dated April 25, 2012; (3) General Terms and Conditions dated April 25, 2012; (4) Federal Acquisition Regulation and Defense Federal Acquisition Regulation Flow-Down Provisions dated April 25, 2012; (5) Orbit Critical Path Method Schedule dated April 25, 2012; (6) Morris Coupling Deduction Worksheet dated April 25, 2012; and (7) List of All Drawings dated April 11, 2012.

The Purchase Order contains general terms and conditions that provide, in relevant part that:

> Any legal or other action brought for the purpose of obtaining a binding adjudication of any disputes arising under or in connection with this order shall be brought and maintained only in the Court of Common Pleas for Bucks County, Pennsylvania or in the United States District Court for the Eastern District of Pennsylvania. The parties hereby consent to the personal jurisdiction of such tribunals, and hereby waive any and all objections to the personal jurisdiction or venue of such tribunals.

(Id. at ¶ 28.) The Purchase Order also provides that the laws of the Commonwealth of

Pennsylvania govern all matters relating to the making, performance or breach of the Purchase Order and that OME accepts the Purchase Order by executing and returning the acknowledgment copy, by substantial performance or by delivery or [sic] any items ordered. (Id. at ¶¶ 29, 30.) Finally, the Purchase Order states:

> ETC PURCHASE ORDER GENERAL PROVISIONS (4/2000) ARE INCORPORATED HEREWITH BY REFERENCE. VENDOR ACKNOWLEDGES HAVING RECEIVED, OR HAVING HAD THE OPPORTUNITY TO RECEIVE, SAID GENERAL PROVISIONS, PRIOR TO ENTERING INTO THIS PURCHASE ORDER.

(Id. at ¶ 31.)

Mitchell declares that OME commenced its performance of the Subcontract in or around May 30, 2012. (Id. at ¶ 32.) Finally, Mitchell declares that each of the 22 invoices that OME has submitted thus far expressly references the Purchase Order. (Id. at ¶¶ 33, 34.)

### Rhea Declaration

Rhea, who is a Vice President of OME, declares that he participated in the negotiation of the Subcontract between OME and ETC. (Rhea Decl. ¶¶ 2, 3.) He declares that OME and ETC negotiated terms and conditions separate from those in the Purchase Order. (Id. at ¶ 8.) The terms and conditions that Rhea declares were separately negotiated excludes all other contractual obligations and does not contain, among other things, a forum selection clause. (Id. at ¶¶ 8, 9.)

OME, according to Rhea, proposed changes to the terms and conditions provided by ETC. (Id. at ¶ 10.) Rhea did not receive a response to OME's proposed changes and believed that they were acceptable to ETC. (Id. at ¶ 12.)

Rhea acknowledges receipt of the Purchase Order. (Id. at ¶ 13.) However, he declares that the correspondence transmitting the Purchase Order states that the Table of Contents documents

would be transmitted by separate mail and the Purchase Order states "See attached Table of Contents for all applicable documents." (Id.)

On April 26, 2012, Rhea received Attachment 3. (Id. at ¶ 15.) Attachment 3 attached to the Rhea Decl. as Exhibit 4 is a document entitled, "Terms and Conditions of Subcontract Between Contractor and Subcontractor."

Issues arose regarding the parties obligations for the work to be performed and Rhea forwarded a copy of the Terms and Conditions of Subcontract Between Contractor and Subcontractor that had been revised by OME to Mitchell. (Id. at ¶ 16.) OME believed that these terms and conditions controlled the relationship because the April 26, 2012 Purchase Order was only appropriate for a party shipping goods. (Id.)

Mitchell responded with questions. (Id. at ¶ 17.) In response to Mitchell's questions, OME indicated that the only item that it agreed with on the Purchase Order was the break-out showing the amounts and the total for the same. (Id. at ¶ 18.) OME further indicated that it had reviewed Attachment 3 and sent back an acceptable revision. (Id.) Further, it was OME's belief that ETC agreed to the acceptable revision. (Id.)

Mitchell's response to the inquiry regarding the applicable contract between OME and ETC was a request for OME's CEO's email address. (Id. at ¶ 19.) On September 13, 2012, Rhea forwarded his June 19, 2012 correspondence to Mitchell reminding him that the issue had not been addressed. (Id. at 20.) No response was received. (Id.)

## ANALYSIS

The basis of ETC's Motion is the forum selection clause in the Purchase Order. Further, ETC, as the moving party, has the burden of showing why the action should be transferred.

*Kuvedina, LLC v. Cognizant Technology Solutions*, 946 F. Supp.2d 749, 761 (S.D. Ohio 2013)**.**

The Contract Between Orbit and ETC

On April 26, 2012, ETC provided Orbit with Purchase Order No. 123574. (Mitchell Decl." ¶ 27, Ex. A-7.) This Purchase Order incorporates by reference, among other things, the General Terms and Conditions dated April 25, 2012. (Id.) According to ETC, the Purchase Order and the attachments, one of which is the General Terms and Conditions, are collectively the Contract with OME. (Id.)

The Purchase Order

The Purchase Order, which is one of the documents that compose the contract between ETC and OME, contains general terms and conditions. Among them are a statement that acceptance of the order is made by executing and returning the acknowledgment copy, by substantial commencement of performance or by delivery of any items ordered. (Id. at ¶ 30.) Another is than any legal action associated with the Purchase Order "shall" be brought and maintained only in the Court of Common Pleas for Bucks County, Pennsylvania or in the United States District Court for the Eastern District of Pennsylvania. (Id. at ¶ 28.)

The General Terms and Conditions

Orbit and ETC negotiated separate terms and conditions outside of those in the Purchase Order. These separate terms and conditions are incorporated into the Purchase Order by reference. (Rhea Decl." ¶ 8.) They were emailed to Orbit on April 26, 2012, identified as "Attachment 3 - General Terms and Conditions." (Id. at ¶ 15.)

These are the General Terms and Conditions dated April 25, 2012, that are incorporated into the Purchase Order by reference. (Id. at ¶ 15.) They are actually entitled, "Terms and

Conditions of Subcontract Between Contractor and Subcontractor."

The General Terms and Conditions does not include a forum selection clause. It does, however, include a statement that, "The term 'Contract documents' includes the Contract, drawings, plans, Specifications, ETC Standard Purchase Order Terms and Conditions on reverse side of Purchase Order document, and all addenda or modifications issued prior to the execution of this Subcontract." It also includes the statement that, "This Subcontract states the entire agreement between the Contractor [ETC] and the Subcontractor [OME]. Neither party is or shall be bound by any stipulations, representations, agreements, or promises, oral or otherwise, not inserted in this Subcontract."

## CONCLUSION

The Purchase Order and all of the incorporated-by-reference documents constitutes the contract between ETC and OME. Thus, the contract between ETC and OME includes the General Terms and Conditions.

OME performed the work and sought compensation from ETC. Thus, according to the terms of the Purchase Order, OME accepted ETC's Contract, which is the Purchase Order and the documents referenced therein..

The Contract is internally inconsistent because one part of it (the Purchase Order) includes a forum selection clause and another part (the General Terms and Conditions) includes a statement that neither OME nor ETC are bound by any stipulations not included in the Terms and Conditions of Subcontract Between Contractor and Subcontractor, and the General Terms and Conditions does not include a forum selection clause.

The General Terms and Conditions is, itself, internally inconsistent. It says the contract

between OME and ETC includes the standard purchase order terms and conditions (which includes a forum selection clause) followed by a statement that neither party is bound by any agreements not inserted in the Subcontract (which does not include a forum selection clause).

ETC has the burden of showing the existence of a mutually-agreed-upon forum selection clause which, if one exists, would be given controlling weight. The evidence that ETC presented does not conclusively show that such a mutually-agreed-upon forum selection clause exists or that the transfer should take place. Since the Motion is based upon the existence of said forum selection clause and the parties exclusively argue the existence of said forum selection clause, the Court does not opine further on proper venue pursuant to 28 U.S.C. § 1391(b)(1) thru (3).

The evidence that ETC has presented does not conclusively show that a transfer should take place based upon a valid forum selection clause. Therefore, ETC's Motion To Transfer Venue (doc. #8) is denied based upon the inconsistency regarding the existence of a forum selection clause in the Contract. Further, ETC's alternative Motion To Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) due to the presence of a forum selection clause is also denied based upon the inconsistency regarding the existence of a forum selection clause in the Contract.

**DONE** and **ORDERED** in Dayton, Ohio this Ninth Day of October, 2014.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record